WILLIAM SCHAAKE, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 16,276.

RAILROADS—*Injury to Stock at a Crossing—Negligence of Engineer.* A judgment against a railroad company for stock killed at a highway crossing sustained on the ground that the engineer, in the exercise of reasonable diligence, ought to have seen the animals before they reached the track and brought his train under control in anticipation of their attempting to cross the track.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed January 8, 1910. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*S. D. Bishop,* and *A. C. Mitchell,* for the appellee.

*Per Curiam:* This is an action to recover damages sustained by the appellee on account of stock being struck and injured upon a railroad crossing by one of the appellant's trains. The case was tried in the district court of Douglas county, where the appellee recovered a judgment for $311.19. Upon the trial in the district court the jury returned special findings of fact as follow:

"(1) Ques. Is there a curve in the defendant's track reaching to the public crossing where the stock of the plaintiff was killed? Ans. Yes.

"(2) Q. How far was the engine of the defendant from the public crossing where the animals were killed when the engineer first saw the plaintiff's stock? A. About 300 yards.

"(3) Q. How far was the engine of the defendant from the public crossing where the animals were killed when the engineer first saw the plaintiff's stock on the crossing? A. About 150 feet.

"(4) Q. In what distance could the engineer, by the exercise of such diligence as an ordinarily prudent person could have used under the same or similar circumstances, have stopped the train after he discovered the animals on the track? A. From 150 to 175 yards.

"(5) Q. Did it reasonably appear to the engineer, when he first saw plaintiff's animals upon the track, that such animals would not move from such position of danger before the collision occurred? A. Yes.

"(6) Q. Did the engineer use such diligence as an ordinarily prudent person would have used under the same or similar circumstances to avoid injury to plaintiff's stock? A. No.

"(7) Q. Upon which side of the engine was the engineer riding when he saw the stock on the track? A. Right.

"(8) Q. At what distance from the public crossing could the engineer have seen the stock? A. Whistling-post.

"(9) Q. What is the extent of the curve approaching the public crossing where the injury occurred? A. Two per cent curve.

"(10) Q. At what distance could the engineer have seen the stock approaching the public crossing, coming

Schaake v. Railway Co.

down the public road leading to the crossing?  A. From whistling-post.

"(11)  Q.  If you find for the plaintiff, what value do you place upon each of the animals killed, and what was the extent of the damage if one of the animals was injured?  A.  Mule, $150; horse, $125; injured mule, nothing.

"(12)  Q.  Did the engineer sound the whistle at the whistling-post west of the crossing where the animals were killed?  A.  He probably did.

"(13)  Q.  Was the bell rung or the whistle sounded before the stock was struck upon the crossing?  A.  The whistle was sounded.

"(14)  Q.  Did the engineer apply the air brakes as soon as he saw the stock?  A.  Enough to slightly slacken speed.

"(15)  Q.  After the engineer saw the stock on the track did he stop the train as soon as he could?  A. Yes."

The appellee's farm is divided by a public highway which crosses the appellant's road about 120 rods east of the appellee's residence.  The appellee keeps two corrals, one on each side of the public highway, into which he turns his stock—horses and mules—alternately.  In March, 1906, while he was changing his stock from one corral to the other, about twenty-five or thirty head of the horses and mules broke away and ran down the highway toward the crossing over the appellant's railroad.  When they reached the crossing a passenger train, which was two hours late and running at a high rate of speed, ran over and fatally injured a horse and a mule.  The jury found that the engineer did not use ordinary diligence to avoid injury to the stock.  The appellant contends that if the engineer did all that he could do after he saw the animals upon the crossing it can not fairly be said that he was negligent.  In this case we do not think the evidence justifies such a conclusion.  In many cases perhaps the engineer is not called upon to do anything to avoid injury to stock until he sees the animals upon the track, but here he was warned of danger at the whistling-

post, which is over 300 yards from the crossing. At this point he could have seen this whole drove of horses and mules running up the road directly toward the crossing. This was enough to warn a reasonably prudent man that they would probably attempt to cross the track. Under such circumstances it was his duty to get the train under control so that if necessary it could be stopped in a very short distance, and not merely apply the brakes so as to "slightly slacken the speed," inasmuch as the train was running at the rate of forty miles an hour. Assuming, as we must, that the engineer saw the stock running in the highway toward the crossing, we can not say that the jury were not justified in finding that the engineer was guilty of negligence in not using greater care to avoid a collision at the crossing.

The only assignment of error discussed by the appellant is the refusal of the court to sustain a demurrer to the evidence. We think the evidence fully justified the verdict, and see no error in the assignments of error not discussed.

The judgment of the district court is affirmed.